CAROL JORGENSEN, APPELLEE, V. DARRELL JORGENSEN, APPELLANT.

231 N. W. 2d 360

Filed July 10, 1975. No. 39805.

Robert G. Scoville of Ryan, Scoville & Uhlir, for appellant.

C. J. Galvin of Leamer & Galvin, for appellee.

Gerald F. Fisher, guardian ad litem.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an appeal by a father in a divorce case from an order of the District Court changing the custody of two minor children from the mother to the maternal grandparents.

On July 9, 1970, decree was entered in the District Court for Dakota County, Nebraska, granting the plaintiff, Carol Jorgensen, an absolute divorce from the defendant, Darrell Jorgensen. The decree accepted the stipulation of the parties and gave the care, custody, and control of the two daughters, Debra, born October 17, 1963, and Jill, born May 20, 1967, to the mother; fixed amounts of child support to be paid by the father;

and granted the defendant father reasonable visitation rights. In May of 1972, the defendant filed a motion to fix reasonable times of visitation, alleging that plaintiff had repeatedly refused him reasonable visitation. When plaintiff failed to appear for a scheduled hearing, the court entered a temporary order for visitation on specified weekends and for certain holiday periods, and continued the hearing. On June 4, 1973, at a further hearing at which plaintiff also failed to appear, the court modified the decree by specifying visitation rights and times, including holiday and vacation periods. On November 27, 1973, the defendant filed an application to modify the decree by changing the custody of the two minor children from the plaintiff to himself. He alleged that the plaintiff had abandoned the children and relinquished them to the custody and control of her parents, Mr. and Mrs. Mark M. Dendinger, of Laurel, Nebraska, without prior approval or order of the court. A hearing was held on the application on February 26, 1974. The plaintiff was not present. The court found that she had frustrated attempts to serve her with process and proceeded to receive evidence and testimony on behalf of the defendant. That evidence was that the two children had been living with their maternal grandparents in Laurel, Nebraska, since the close of the school year in the spring of 1973. The plaintiff meanwhile was living and working in a city some 40 miles away. The defendant testified that he did not believe the plaintiff wanted the children, but instead wanted to keep him from getting them. His evidence was that he had remarried and had a comfortable home in good surroundings, with ample space, including a separate bedroom for the two girls which was constantly maintained for them. He had a permanent job with a steel company in Norfolk, Nebraska. His present wife enjoyed having the girls in their home and had a real affection for them. His present wife has a 7-year-old son who was living with them and the three children

get along well together. The defendant's present wife confirmed his testimony. Several other witnesses testified that the defendant and his wife were good parents, of high moral character, and of good reputation in the community. The defendant had regularly exercised his visitation rights and had taken the children into his home for weekends and vacation periods as authorized. Child support payments had been paid and were current.

At the close of the evidence the District Court continued the hearing until June 3, 1974, in an effort to secure the attendance of the plaintiff, and placed temporary custody of the children in the maternal grandparents in order that the children could complete the 1973-74 school year in Laurel. A copy of this order was served on both the plaintiff and the maternal grandparents.

The second portion of the hearing was held on June 3, 1974. Both the plaintiff and defendant appeared with counsel. Essentially, the evidence presented at this hearing was on behalf of the plaintiff. She had remarried after her divorce from the defendant but was not married at the time of the hearing. She was employed as a waitress. She worked evening hours and had take-home pay of $100 per week, plus tips. She testified that her apartment in Sioux City, Iowa, was adequate and other witnesses testified as to her fitness as a mother. She testified on cross-examination that she had visited the children once or twice a month since they had been living with her parents in Laurel. She also proposed to hire a 15-year-old babysitter to stay with the children in the evenings while she worked. She conceded that she had agreed to a guardianship of the children by her parents but had never signed a consent. At the conclusion of the hearing the court appointed Gerald Fisher guardian ad litem for the children, and continued the matter pending investigation by the guardian ad litem. The court provided that the temporary custody of the children should remain in the ma-

ternal grandparents pending final decision to be made in August 1974, and also provided for visitation and vacation custody during the summer as between the plaintiff and defendant.

On August 14, 1974, the guardian ad litem reported by letter to the court that he had interviewed various witnesses and considered the information he had been able to gather, including the wishes of the children. He reported that the children stated they would rather live with their maternal grandparents and that they would rather not live with their father because they did not like the stepson. He therefore recommended that strong consideration be given to placing the children with the maternal grandparents. In the alternative he felt that the father's home was more stable and in spite of the girls' present distaste for the stepson would be a better atmosphere for the girls than with the mother.

On August 16, 1974, without notice or further hearing, the District Court entered its order directing that the care, custody, and control of the children be given to the maternal grandparents, Mr. and Mrs. Mark Dendinger, of Laurel, Nebraska, with visitation rights of the defendant to remain the same and the plaintiff to have equal visitation rights. The defendant's motion for new trial was overruled and this appeal followed.

On the basis of the record in this case it is clear that the order of the District Court was based upon the report of the attorney for the children rather than on the evidence in the record. Copies of the report were not furnished to the parties, and the court entered its order without notice to either of the parents and without even an opportunity for a further hearing. The action taken here was in complete disregard of the basic requirements of due process. In addition, there was simply no evidence in the record, nor in the report of the attorney for the children, which could be the basis for granting custody of the children to the maternal grandparents.

Presumably the attorney for the children, although

designated a guardian ad litem, was appointed under the authority of section 42-358, R. R. S. 1943. That statute provides in part: "Such attorney shall be empowered to make independent investigations and to cause witnesses to appear and testify on matters pertinent to the welfare of the children." Section 42-351, R. R. S. 1943, authorizes the court to make such investigations as are appropriate concerning the custody of minor children. Neither of these sections authorize the substitution of ex parte reports for evidence and testimony in a divorce case, nor do they make any such reports a part of the record of the proceedings.

Under a former statute dealing with related matters this court held that such reports are not evidence and cannot be the basis for any adjudication. Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731. In that case an investigator was appointed by the court to report on the issue of child custody. Not only did this court hold that ex parte statements are too unreliable to be considered in the investigation of controverted facts but also that due process requires that witnesses be subject to the right of cross-examination by the parties to the proceeding. We said that "neither a judge, a juror, a judge's representative investigator, nor the party whose statement such investigator secures may lawfully contribute any competent testimony for the consideration of a jury or court, unless he take the stand as a witness, is sworn, and is subjected to the usual test of cross-examination." Subsequent cases confirm the holding in Dier, and also require that where such a report may form the basis for the conclusions or judgment entered, the trial court must submit the report to counsel for examination and hold a further hearing at which the parties may call the person making such a report to testify and may call other witnesses to contradict any facts in the report. See, Schuller v. Schuller, 191 Neb. 266, 214 N. W. 2d 617; Christensen v. Christensen, 191 Neb. 355, 215 N. W. 2d 111. Basically similar procedures were required by

statute prior .to 1972. See § 42-307, R. R. S. 1943, repealed in 1972. See, also, Goodman v. Goodman, 180 Neb. 83 at p. 88, 141 N. W. 2d 445 at p. 449.

In any event, even if the report were included, it is indisputable that there is no evidence in this case which can be the basis for the adjudication made by the District Court. Not only is there no evidence of the fitness of the grandparents, neither is there any evidence in this record that either parent is unfit to have the custody of these minor children, nor did the court make any such finding. Over a long period of time our decisions have consistently held that courts may not properly deprive a parent of custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. It is equally clear that when a controversy arises as to the custody of a minor child between a parent and a third person, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent. Carlson v. Wivell, 181 Neb. 877, 152 N. W. 2d 98; Marcus v. Huffman, 187 Neb. 798, 194 N. W. 2d 221; Bigley v. Tibbs, 193 Neb. 4, 225 N. W. 2d 27.

The judgment of the District Court is reversed and the cause remanded to the District Court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SPENCER, J., dissenting in part and concurring in part.

I concur in the finding that the trial court erred in awarding custody of the children to the maternal grandparents. There is no evidence in the record to sustain this position.

I dissent from the remanding of the cause for further proceedings. On the record before us the mother has abandoned the children. On the other hand, the natural father of the children is requesting their custody. The

record indicates that he is a proper and suitable person to have such custody and could provide an adequate and wholesome home for said children.

Our law is well established that while the best interests of the children involved are paramount in the awarding of their custody, the natural parents of said children are presumptively entitled to the custody and the same cannot be given to a third party without a specific finding by the court based on clear, convincing, and competent evidence that the parents are unfit to have such custody.

In my judgment, rather than putting the father to the expense of another trial and a possible appeal, we should remand the cause with directions to grant him the custody of said children.

WHITE, C. J., and NEWTON, J., join in this dissent and concurrence.